The document below is hereby signed.

Signed: October 12, 2016



_S. Martin Teel Jr_
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| CHENG & COMPANY L.L.C., | ) | Case No. 15-00014 |
| | ) | (Chapter 11) |
| Debtor. | ) | **Not for Publication in** |
| | ) | **West's Bankruptcy Reporter** |

MEMORANDUM DECISION RE MOTION FOR SUMMARY
<u>JUDGMENT RE DEBTOR'S AMENDED OBJECTION TO CLAIM</u>

The Debtor, Cheng & Company L.L.C., filed an amended objection to the claim of MR 619 H Street Capital LLC ("MR 619"). MR 619 has filed a *Motion for Summary Judgment* regarding the objection.

Before laying out the undisputed facts as framed by the parties, it will be useful to provide some background. The issues involve a *Purchase and Sale Agreement* ("*Agreement*") that addressed two sets of properties, one known as the H Street Property (owned by the Debtor) and the other known as the Eye Street Property (owned by affiliates of the Debtor, the "Eye Street Seller," to whose rights the Debtor has succeeded). Pursuant to the *Agreement*:

- The H Street Property was to be sold by the Debtor to

MR 619, referred to in the *Agreement* as the H Street
Purchaser, with the Debtor being obligated to pay the
deposit back to MR 619 if the Debtor failed to achieve
certain H Street Acquisition Requirements and MR 619
terminated the *Agreement* on that basis.  That
contingent obligation to pay back the deposit was
secured by a mortgage against the H Street Property.
MR 619 asserts that the Debtor failed to achieve
certain H Street Acquisition Requirements, that MR 619
exercised its right to terminate the *Agreement* based
upon that failure, and that the resulting obligation
remains unpaid and owing.

- The Eye Street Property was to be sold by the Eye
  Street Seller to an entity referred to as the Eye
  Street Purchaser.  After the Eye Street Property was
  developed, there was to be conveyed to the Eye Street
  Seller certain space referred to as the Eye Street
  Retail Unit.  There has been no conveyance of an Eye
  Street Retail Unit to the Debtor as the successor to
  the Eye Street Seller's rights.

On February 16, 2016, the court held a hearing to address the
*Motion*.  I conclude that MR 619 is entitled to a grant of summary
judgment in its favor on the question of whether the Debtor
breached the terms of the *Agreement*.  It is also entitled to a

2

grant of summary judgment in its favor on the question of whether a right to repayment arose in its favor when it invoked its right to terminate its obligations under the *Agreement*.  It is not entitled to a grant of summary judgment disposing of the entirety of the Debtor's objection to claim, however, because the debtor has asserted a right of setoff predicated on several tort claims and alter ego claims with respect to some of which there remain genuine issues of material fact that must be resolved.[1] Specifically, the Debtor has raised genuine issues of material fact with respect to whether MR 619 can be held liable for the alleged breach of the *Agreement* by the Eye Street Purchaser and for wrongfully conspiring with the Eye Street Purchaser and its affiliates to deprive the Debtor of its rights under the

---

[1] Some of the tort claims the Debtor raises lack merit. Specifically, as will be seen, I reject the debtor's tort claims premised on the failure of MR 619 and the Eye Street Purchaser to disclose to the Debtor their belief that, upon the Debtor's failure to achieve certain H Street Acquisition Requirements, § 2.2.3(e) of the *Agreement* gave MR 619 and the Eye Street Purchaser the right to terminate the Eye Street Purchaser's obligation to convey the Eye Street Retail Unit to the Eye Street Seller.  That belief was in error, and thus the Debtor was not harmed by any failure to disclose that belief.  That necessarily disposes of the debtor's fraudulent concealment and negligent misrepresentation claims against MR 619.  The court's rejection of those claims does not extinguish any attorney's fees claim the debtor may eventually assert against MR 619 for having advanced its erroneous interpretation of the *Agreement*.

3

*Agreement*.[2]   These remaining tort claims constitute defenses to
MR 619's claim that must be resolved before I can fully dispose
of the Debtor's objection to claim.[3]

---

[2]   These allegations are cast as claims for tortious
interference with contractual relations, civil conspiracy, and an
alter ego theory under which the Debtor contends that MR 619
ought to be held liable for the Eye Street Purchaser's alleged
breach of the *Agreement*.

[3]   As explained later in this opinion, it is unclear if the
Debtor intends to press those remaining tort theories as part of
its objection to claim in this court.

I

Facts as to Which There is no Genuine Dispute[4]

The material facts as to which there is no genuine dispute

are as follows.

In 2011, representatives of Monument Realty, LLC entered

into negotiations with Anthony Chun Yuk Cheng (the Debtor's

principal) to acquire 619 H Street, NW, Washington, D.C. (the "H

---

[4] The Debtor has filed a "Statement of Material Facts in Support of Opposition to Motion for Summary Judgment," addressing each of the 34 facts listed by MR 619 in its statement of material facts and identifying nine additional facts not included in MR 619's Statement of Material Facts. MR 619 contends that the Debtor's statement does not satisfy the requirements of LBR 7056-1, which provides that "[e]ach motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, and . . . . [a]n opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated . . . ."
MR 619 is correct insofar as the statement fails to isolate those facts that the Debtor contends are disputed and give rise to a genuine issue necessary to be litigated. As a practical matter, however, the Debtor has clearly identified the material facts offered by MR 619 as to which the Debtor contends there is a genuine dispute, and the nine additional facts listed by the Debtor restate the basic tort theories that the Debtor has consistently raised as defenses to MR 619's proof of claim. Some of those additional facts may not be disputed (*e.g.*, the facts relating to the overlapping membership interests between the various entities), while others are almost certainly disputed (*e.g.*, the allegation that MR 619 and the Eye Street Purchaser had a hidden agenda wrongfully to divest the Debtor of its contractual right to conveyance of the Eye Street Retail Unit). Under the circumstances, I conclude that the Debtor's LBR 7056-1 statement served its intended purpose of clearly identifying the issues in dispute, and I find no prejudice to MR 619 stemming from the form of the Debtor's LBR 7056-1 statement.

Street Property") and three other Washington, D.C. properties (collectively the "Eye Street Property"): (i) 608 Eye Street, NW; (ii) 610 Eye Street, NW; and (iii) 614 Eye Street, NW.

The Debtor, as the H Street Seller; MR 619, as the H Street Purchaser; 614 Eye Street L.L.C., Cheng, and Cheng's wife, Yun-Li Cheng (collectively referred to as the "Eye Street Seller"); and ACY and YL Cheng LLC (the "Eye Street Purchaser")[5] executed that certain *Purchase and Sale Agreement (District of Columbia)* dated December 21, 2012 (the "*Agreement*").  The Eye Street Seller has assigned its rights under the *Agreement* to the Debtor.

Starting in September 2012, Mark Tenenbaum, an attorney, represented Cheng and his interests in connection with the negotiation and drafting of the *Agreement*.  The *Agreement* contains the terms by which the Eye Street Purchaser agreed to purchase the Eye Street Property from the Eye Street Seller and the terms on which MR 619 agreed to purchase the H Street Property from the Debtor assuming certain conditions were timely met (the "H Street Acquisition Requirements").

Under the *Agreement*, the sale of the Eye Street Property was independent of the sale of the H Street Property.  The closing of the sale of the Eye Street Property pursuant to the *Agreement* occurred on December 28, 2012.  As discussed in more detail

---

[5]  Despite the name of the Eye Street Purchaser, it was not an entity in which Cheng and his wife had an interest.

later, after the development of the Eye Street Property was completed, space known as the Eye Street Retail Unit was to be conveyed to the Eye Street Seller.

In contrast to the Eye Street Property sale, the closing of the H Street Property sale was not required until certain H Street Acquisition Requirements were met. However, as contemplated by the *Agreement*, the Debtor received in advance the $1,250,000 H Street Deposit. The *Agreement* provided for the repayment of the H Street Deposit in the event MR 619 exercised its right to terminate its obligations under the *Agreement*.

The obligation of the Debtor under the H Street Deposit Note is secured by a second priority deed of trust on the H Street Property (the "H Street Mortgage"). MR 619 was entitled under § 2.2.4(c) of the *Agreement* to terminate its obligations under the *Agreement* if the H Street Acquisition Requirements were not timely met, in which case § 2.2.3(e) of the *Agreement* would apply.

By letter dated February 19, 2014, MR 619 and the Eye Street Purchaser provided notice of termination of the *Agreement* to the Debtor and the Eye Street Seller due to no H Street Acquisition Requirement being fulfilled. The February 19, 2014 letter was addressed as provided under the *Agreement* for providing notices to either Seller. The Debtor has not repaid the H Street Deposit despite demand.

7

The Eye Street Purchaser as Licensor and the Debtor as Licensee entered into that certain Parking License Agreement dated December 28, 2012, granting Debtor a non-exclusive license to park on up to twenty-two (22) parking spaces located on 608 and 614 Eye Street, NW, Washington D.C. The Eye Street Purchaser sent a Notice of Termination of Parking Lot Agreement dated September 16, 2014, to Debtor, purporting to terminate the Parking License Agreement as of September 22, 2014.[6]

The *Agreement* in its opening paragraph provides:

> Notwithstanding the above, (a) whenever the term "Seller" or "Purchaser" is used in this Agreement, it shall mean the seller or purchaser of the applicable portion of the Property referenced, or, as context requires, the sellers or purchasers of all or a portion of the Property, and (b) notwithstanding the conjunctive use of the term "Seller" or "Purchaser" in certain places in this Agreement, the obligations of Eye Street Seller and H Street Seller, as well as Eye Street Purchaser and H Street Purchaser, shall be independent and several obligations (and *not* joint and several obligations) except where the context of this Agreement clearly provides for a Seller or Purchaser performance obligation which, by its nature, is jointly applicable to Eye Street Seller and H Street Seller, or Eye Street Purchaser and H Street Purchaser, respectively. The Seller and the Purchaser may sometimes be referred to in this Agreement collectively as the "Parties," and individually as a "Party."

The term "Developer" is defined under Section 12.18.2(d) of the *Agreement*:

The term **"Developer"** shall mean and refer to the

---

[6] Although the Debtor concedes that the letter was sent, the Debtor contends that there was no right to terminate the Parking Lot Agreement.

> Purchaser, and any Purchaser Affiliate which (i) acquires
> title to all properties that are a part of Purchaser's
> Assemblage, and (ii) develops the Project in accordance
> with this Agreement.   If more than one Purchaser
> Affiliate acquires title to any of the separate parcels
> and properties that form a part of Purchaser's
> Assemblage, then the term "Developer" shall be understood
> to mean, collectively, Purchaser and all Purchaser
> Affiliates.

(Emphasis in original.)  Section 12.19.1 of the *Agreement*
included a provision requiring Developer, upon completing
development of the Eye Street Property, to convey space known as
the Eye Street Retail Unit to Seller.[7]  Although the parties
dispute whether the definition of "Developer" in the *Agreement*
was drafted solely by Tenenbaum or through the joint efforts of
Tenenbaum and Eugene Tibbs (the attorney who represented MR 619
and the Eye Street Purchaser) on behalf of their respective

---

[7]  Section 12.19.1 of the *Agreement* provided:

> Upon the completion of the development of the relevant
> portion of the Project which incorporates the Eye Street
> Property and/or adjacent properties **by Developer** (the
> "Eye Street Improvements"), Developer shall convey to
> Seller (or Seller Affiliate) by special warranty deed
> (and deliver to Seller or such Seller Affiliate
> possession of) a retail condominium unit on the first
> occupied level (which may be partially below grade and
> may have different levels within it) in the vicinity of
> the property known on the Effective Date as 620 Eye
> Street, NW, in Washington, DC ("620 Eye") with access to
> both Eye Street and the immediately adjacent public or
> private alley area, as applicable . . . (the "**Eye Street
> Retail Unit**").

(Emphasis added.)  There was a provision for substituting other
property as the Eye Street Retail Unit if certain difficulties
arose regarding placing the Unit in the vicinity of 620 Eye.

clients, the parties agree that at least one purpose for the definition of Developer was to ensure that whichever entity ended up as the owner of the Eye Street Property would be obligated to convey the Eye Street Retail Unit.  Tenenbaum did not tell anyone representing MR 619 or the Eye Street Purchaser that in drafting the definition of Developer, Tenenbaum intended to make MR 619 liable for the obligations of the Eye Street Purchaser.

Section 2.2.3(e)(ii)(D) of the *Agreement* provides:

> [T]he termination of this Agreement by Purchaser under this Section 2.2.3(e) shall be deemed to terminate any obligation on the part of Purchaser to develop Purchaser's Assemblage in a particular manner, or otherwise deliver the Condominium Properties to Seller, even if Purchaser thereafter acquires title to the H Street Property through a foreclosure of the H Street Mortgage pursuant to clause (C) of this subparagraph) [.]

Section 2.2.3(e)(iv) of the *Agreement* provides:

> [E]xcept as provided in the preceding clauses (i)-(iii) above, and any other provision of this Agreement that, by its terms, survives the termination of this Agreement, the Parties shall have no further obligations or liabilities to one another under this Agreement.

The Debtor filed its Chapter 11 case on January 13, 2015. On April 14, 2015, MR 619 filed its proof of claim setting forth a secured claim in the amount of $1,378,245.22 for "Money Loaned under Note and Deed of Trust."  On May 12, 2015, Debtor filed its objection to the Claim.  The basis of the objection to claim was an *Amended Complaint* filed by the Debtor and the Eye Street Seller against MR 619 and Eye Street Purchaser in the Superior Court of the District of Columbia.  On June 8, 2015, MR 619 filed

10

a response to the Objection to Claim with a copy of the *Agreement*
and all exhibits and amendments thereto attached as Exhibit 1.

Following a hearing on the Objection to Claim and MR 619's
response thereto on July 29, 2015, this Court entered an Order re
Objection to Claim of MR 619 H Street Capital, LLC ("July 30th
Order") (Dkt. No. 62).  In that order, the court deemed the proof
of claim of MR 619 H Street Capital LLC to be amended to include
as an attachment the copy of the *Agreement* attached to the
response to the objection to claim.  The court rejected the
Debtor's argument that, without more, the letter of February 19,
2014, terminating the *Agreement*, and signed by both the Eye
Street Purchaser and MR 619, could support a finding that MR 619
breached the *Agreement* given that the obligation to convey the
Eye Street Retail Unit to the Eye Street Seller – the obligation
that the Debtor alleged was breached by virtue of the termination
letter – was an obligation owed by the Eye Street Purchaser, not

11

MR 619.[8]

On November 13, 2015, this Court allowed the Debtor to amend the objection to claim based on the filing of a *Second Amended Complaint* with the Superior Court of the District of Columbia. The Debtor's *Second Amended Complaint* attempts to hold MR 619 liable for the obligation under the *Agreement*, after the development of the Eye Street Property was completed, to convey the Eye Street Retail Unit to the Eye Street Seller.

On December 18, 2015, this Court entered a memorandum decision and an order temporarily allowing the claim of MR 619 in full for purposes of voting on Debtor's most recent plan.

II

MR 619 filed a proof of claim in this case asserting a secured claim in the amount of $1,378,245.22 for "Money Loaned

---

[8]   The Debtor emphasizes that the July 29, 2015 hearing was a non-evidentiary hearing, and the Debtor is correct that the hearing was noticed out as a non-evidentiary hearing.  During the hearing, however, the court inquired about the factual basis for the Debtor's breach of contract claim against MR 619 and asked the Debtor what evidence it intends to rely upon to establish its claim.  In response, the Debtor presented the court with the February 19, 2014 letter, contending that the letter was evidence of a breach by MR 619 of the *Agreement* (the wrongful termination of the obligation to convey the Eye Street Retail Unit), and that by signing the letter, MR 619 was a party to the breach.  I concluded that, standing alone, MR 619's signing of the termination letter as to an obligation that was not owed by MR 619 did not render MR 619 liable for the breach.  (I did not foreclose the Debtor's right to present additional evidence to establish either that the obligation was, in fact, an obligation of MR 619, or alternatively, that some other act of MR 619 constituted a breach of contract.)

under Note and Deed of Trust." The Debtor does not dispute that
it received the funds, but contends, under theories of contract
and tort, that it has a right to rescission of the deed of trust
or, alternatively, a right of setoff against the claim. The
Debtor has filed an objection to claim that incorporates the
*Second Amended Complaint* filed against MR 619 and other
defendants in the Superior Court of the District of Columbia.
Although the stay has been lifted to permit the Superior Court
litigation to proceed, the parties have filed status reports in
this proceeding indicating that the deadline for filing
dispositive motions in the Superior Court was stayed pending this
court's ruling on MR 619's *Motion for Summary Judgment*.

Resolution of the Debtor's objection to MR 619's claim
depends, first, on the interpretation of the *Agreement*, a
contract addressing the purchase and sale of two separate parcels
of real property, and entered into between the Debtor, MR 619,
and other parties. Although I expressed my preliminary views on
the interpretation of the *Agreement* in my December 18, 2015
*Memorandum Decision re Estimation of the Claim of MR 619 for*
*Purposes of Voting on the Debtor's Plan of Reorganization* (Dkt.
No. 137) ("*Estimation Decision*"), I was able to do so without
regard to whether either party had shown the existence of a
genuine issue of material fact that would prevent me from ruling
on the interpretation of the contract as a matter of law. Here,

13

however, I am bound by the standards applicable to a motion for summary judgment.[9]

A.

Pursuant to Fed. R. Civ. P. 56, as incorporated by Fed. R. Bankr. P. 7056, summary judgment will be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The court must deny summary judgment where there is a genuine issue as to any material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  If the movant makes a properly supported motion, the burden shifts to the opposing party to demonstrate specific facts showing that there is a genuine issue for trial.  *Id.* at 256-57.

If the moving party does not bear the burden of proof at

---

[9] Both parties cite to portions of my *Estimation decision* in support of their respective positions.  The Debtor has indicated that for purposes of resolving the Debtor's objection to claim, it "would accept this Court adopting 'all' of its findings and rulings regarding the contractual interpretation of the [*Agreement*] as set forth in the [*Estimation Decision*] based upon the evidence presented during the evidentiary hearing conducted on December 9th through December 11th, 2015."  In its willingness to concede any disagreement it may otherwise have with the court's *Estimation Decision*, the Debtor takes the position that any such adoption of my *Estimation Decision* must be in its entirety, and crucially, it must include the finding from my *Estimation Decision* that the obligation to deliver the Eye Street Retail Unit was not terminated under the *Agreement* when MR 619 exercised its right not to purchase the H Street Property. Given that MR 619 has not consented to the Debtor's proposal, the court will dispose of MR 619's motion by applying the standards applicable to motions for summary judgment.

14

trial on an issue, summary judgment may be granted if the moving

party shows "that there is an absence of evidence to support the

nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317,

325 (1986).  If the movant alleges that the opposing party lacks

proof to establish requisite elements of its case, the movant

must show the absence of such facts. *Id.*  The court must view

the opposing party's evidence in the light most favorable to

nonmovant's position and draw inferences in favor of that party,

provided such inferences are justifiable or reasonable.

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

574, 587-88 (1986).

B.

When interpreting a contract, "the court must adhere to the

objective law of contracts, whereby the written language

embodying the terms of an agreement will govern the rights and

liabilities of the parties, irrespective of the intent of the

parties at the time they entered the contract, unless the written

language is not susceptible of a clear and definite undertaking,

or unless there is fraud, duress or mutual mistake." *Potomac*

*Elec. Power Co. v. Mirant Corp.*, 251 F. Supp.2d 144, 148 (D.D.C.

2003) (internal quotations omitted).  Accordingly, a threshold

issue that needs to be resolved is whether the relevant

provisions of the *Agreement* present any ambiguities, and that is

a question of law for the court to decide. *Deutsche Bank Nat'l*

15

*Tr. Co. v. FDIC*, 109 F. Supp.3d 179 (D.D.C. 2015).

"A contract is not ambiguous merely because the parties dispute its meaning or could have drafted clearer terms." *Potomac Elec. Power Co. v. Mirant Corp.*, 251 F. Supp.2d 144, 148 (D.D.C. 2003). "Rather, a contract is ambiguous when it or its provisions are reasonably or fairly susceptible of different constructions or interpretations, or of two or more different meanings." *Id.* at 148-49. "A Court generally will not grant summary judgment where a contract is ambiguous because its interpretation inevitably would depend on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence."[10] *Id.* at 149. Even if a contract is found to be ambiguous, however, and extrinsic evidence is allowed, "if the extrinsic evidence demonstrates that only one view is reasonable – notwithstanding the facial ambiguity – the court must decide the contract interpretation question as a matter of law." *Deutsche Bank Nat'l Tr. Co. v. FDIC*, 109 F. Supp.3d 179, 198 (D.D.C. 2015) (quoting *American First Inv. Corp. v. Goland*, 925 F.2d 1518, 1522 (D.C. Cir.

---

[10]   Just as the interpretation of an ambiguous contract is generally left for resolution by the finder of fact at trial rather than disposed of on summary judgment, "when a question of contract interpretation depends for its resolution upon evidence of the intent of the parties, which may require the finder of fact to evaluate the credibility of witnesses, summary judgment is inappropriate." *Bednarik v. United Steelworkers of Am.*, 634 F. Supp. 498, 501 (N.D. Ohio 1985).

1991)).

1.

The meaning of the terms "Developer" and
"Purchaser" as used in the *Agreement* is unambiguous.

Contrary to the Debtor's contention, MR 619 was not the
Developer required to convey the Eye Street Retail Unit.   The
term "Developer" in § 12.19.1 is unambiguous in meaning only the
Eye Street Purchaser.   The opening sentence of § 12.19.1 of the
*Agreemen*t provides that:

> [u]pon the completion of the development of the relevant
> portion of the Project which incorporates the Eye Street
> Property and/or adjacent properties by Developer (the
> **"Eye Street Improvements"**), Developer shall convey to
> Seller (or Seller Affiliate) by special warranty deed
> (and deliver to Seller or such Seller Affiliate
> possession of) [the Eye Street Retail Unit].

(Emphasis in original.)   Contrary to the Debtor's argument, the
term "Developer" as used in that provision does not include MR
619.   The *Agreement* is not ambiguous in that regard because the
*Agreement* is, in context, not fairly susceptible of the
interpretation the Debtor urges, for the following reasons.

First, § 12.19.1 refers to the development of the Eye Street
Property, which was purchased by the Eye Street Purchaser, not MR
619.   The term "Developer" in that context means the Eye Street
Purchaser.   It made sense in § 12.19.1 to refer to the Eye Street
Purchaser as the "Developer" because it was only after "the
Project which incorporates the Eye Street Property and/or
adjacent properties" was developed that there was to be a

17

conveyance of the Eye Street Retail Unit to the Eye Street

Seller.

Second, the *Agreement* did not contemplate that MR 619 (the H

Street Purchaser) would acquire the Eye Street Property and be in

a position to develop it.  Indeed, MR 619 has acquired no

property pursuant to the *Agreement*.  The only property to be

acquired by MR 619 was the Debtor's H Street Property, which was

to be developed, and after which, under § 12.20 of the *Agreement*,

there was to be a delivery to the Seller (*i.e.*, the Debtor) of

condominium space known as the H Street Retail Unit.  In that

context, it was only if the H Street Property sale had been

completed that MR 619 would have been a Developer.

Third, in any event, the concluding sentence of § 12.19.1

refers to the entity required to make the conveyance as the

Purchaser:

> If the Project Approval process or factors beyond
> Purchaser's control, including factors of
> constructability hinders the placement of the Eye Street
> Retail Unit in the vicinity of 620 Eye, then the Seller
> and Purchaser shall work in good faith to identify
> another space of the same size and at least partially on
> the same level as the 620 Eye location between 608 and
> 618 Eye Street which will, upon mutual approval by
> Purchaser and Seller, constitute the Eye Street Retail
> Unit within the meaning hereof.

Accordingly, the "Developer" referred to in § 12.19.1 was a

Purchaser, obviously meaning the Eye Street Purchaser because as

to the Eye Street Property referred to in the opening sentence of

§ 12.19.1, the Eye Street Purchaser, not MR 619, was the

18

Purchaser.  Similarly, elsewhere, the *Agreement* refers to the
"Purchaser" conveying the Eye Street Retail Unit to the Eye
Street Seller:

- Section 12.19.5 of the *Agreement* states that "[u]pon
  the conveyance and delivery by Purchaser to Seller of
  the Eye Street Retail Unit, Seller shall pay to
  Purchaser Five Hundred Thousand and No/100 Dollars . .
  . which amount Seller may obtain by placing a mortgage,
  at Seller's cost, on the Eye Street Retail Unit at the
  time that Purchaser conveys and delivers the Eye Street
  Retail Unit to the Seller."

- Section 12.19.6 of the *Agreement* states that "Purchaser
  will convey to Seller good and marketable fee simple
  title to the Eye Street Retail Unit. . . ."

The Eye Street Retail Unit was to be located, unless there were
difficulties in doing so, in the vicinity of 620 Eye Street.  The
real property at 620 Eye Street was not one of the parcels
comprising the Eye Street Property conveyed under the *Agreement*
to the Eye Street Purchaser.  Nevertheless, the above-mentioned
provisions show that a "Purchaser" was the entity obligated to
convey the Eye Street Retail Unit, and, in context, that
"Purchaser" could only be the Eye Street Purchaser (as the owner
of the Eye Street Property mentioned in the opening sentence of
§ 12.19.1).

19

Fourth, the way the term "Developer" is defined demonstrates
that MR 619 was not the Developer required to convey the Eye
Street Retail Unit.  The term  "Developer" is defined under
Section 12.18.2(d) of the *Agreement*:

> The term "**Developer**" shall mean and refer to the
> Purchaser, and any Purchaser Affiliate which (i) acquires
> title to all properties that are a part of Purchaser's
> Assemblage, and (ii) develops the Project in accordance
> with this *Agreement*.  If more than one Purchaser
> Affiliate acquires title to any of the separate parcels
> and properties that form a part of Purchaser's
> Assemblage, then the term "Developer" shall be understood
> to mean, collectively, Purchaser and all Purchaser
> Affiliates.

(Emphasis in original.)  In turn, the term "Purchaser Affiliate"
is defined under § 12.4.1 of the *Agreement*, page 79, as follows:

> The term "**Purchaser Affiliate**" shall mean any entity
> which is directly or indirectly, through one or more
> intermediaries, controlled by, or under common control
> with, Purchaser or any of its affiliates, control being
> understood to mean the ownership of an economic and
> capital interest in the entity controlled, combined with
> the power and authority to make day-to-day management
> decisions for such entity

(Emphasis in original.)  I agree with MR 619 that:

> By asserting that MR 619 falls under the definition of
> "Developer" as a "Purchaser" under the [*Agreement*], or
> otherwise, the Debtor completely ignores the first
> sentence of the definition which provides that a
> Purchaser and any Purchaser Affiliate must have acquired
> title to at least one parcel of property that comprises
> Purchaser's Assemblage and must have developed the
> Project.  The second sentence of the definition is
> subject to the first sentence of the definition, and it
> is implicit in the second sentence of the definition that
> the reference to "Purchaser Affiliates" means Purchaser
> Affiliates that have acquired title to properties
> comprising Purchaser's Assemblage and that have developed
> the Project in accordance with the [*Agreement*].  This is

20

> the only construction that is consistent with both the
> first sentence of the definition of "Developer" and with
> Section 12.19.1 of the [*Agreement*] which section
> implicitly requires Developer to own the Eye Street
> Retail Unit [in] order to be able to convey the Eye
> Street Retail Unit "by special warranty deed."

*Memorandum of Law in Support of Motion for Summary Judgment*, at

10 (Dkt. No. 140). The definition of "Developer" requires that

an entity "develops the Project in accordance with this

Agreement" in order to be a Developer. MR 619 did not become a

"Developer" as a Purchaser, or otherwise, because it does not and

will not own any property which comprises Purchaser's Assemblage

and because it is not developing and will not develop the Project

in accordance with the *Agreement*.

Finally, although the definition of Developer refers to

development of the Project, and the term "Project" (as defined in

§ 2.2.4(a)) can be read as including both Properties, MR 619 was

created only to purchase the H Street Property and is not

acquiring that Property or any other real property under the

*Agreement*. It did not acquire title to the Eye Street Property,

and had nothing to do with the development of the Eye Street

Property, and thus is not a Developer with respect to the Eye

Street Property. Moreover, § 12.19.1 refers to "development of

the relevant portion of the Project which incorporates the Eye

Street Property and/or adjacent properties by Developer," making

clear that the term Developer as used in § 12.19.1 means the

entity developing the Eye Street Improvements, not MR 619 which

21

was to develop the H Street Property.  To elaborate, interpreting

the *Agreement* otherwise would be contrary to the opening

paragraph of the *Agreement*, which specified that:

> the obligations of . . . Eye Street Purchaser and H
> Street Purchaser, shall be independent and several
> obligations (and *not* joint and several obligations)
> except where the context of this Agreement **clearly**
> **provides** for a . . . Purchaser performance obligation
> which, **by its nature,** is jointly applicable to . . . Eye
> Street Purchaser and H Street Purchaser . . . .

(Emphasis added.)  By its nature, the obligation to convey the

Eye Street Retail Unit was an obligation applicable only to the

Eye Street Purchaser, as the owner of the Eye Street Property

that only it was in a position to develop, and was not an

obligation applicable to the H Street Purchaser who would not

have the necessary title to convey the Eye Street Retail Unit to

the Eye Street Seller.  Certainly, with respect to the obligation

to convey the Eye Street Retail Unit the *Agreement* did not

**clearly** provide for "a Purchaser performance obligation which, by

its nature, is jointly applicable to . . . Eye Street Purchaser

and H Street Purchaser [MR 619]."

2.

The *Agreement* unambiguously provides that all of
MR 619's obligations were terminated under the *Agreement*
upon exercising its right to cancel the H Street Purchase.

Even if MR 619 had an obligation to convey the Eye Street

Property, which it did not, the unambiguous language of the

*Agreement* requires the finding that any such obligation on the

part of MR 619 was terminated.  Section 2.2.3(e)(ii)(D)

unambiguously provides that upon MR 619's exercising its right to

cancel the H Street purchase, all of MR 619's obligations under

the *Agreement* were terminated.  The Debtor does not dispute that

MR 619 was entitled under § 2.2.4(c) to terminate the *Agreement*

because the H Street Acquisition Requirements had not been met

timely, in which case § 2.2.3(e) would apply.  Under

§ 2.2.3(e)(ii)(D), such a termination of the *Agreement*:

> shall be deemed to terminate any obligation on the part
> of Purchaser to develop Purchaser's Assemblage in a
> particular manner, or otherwise deliver the Condominium
> Properties to Seller, even if Purchaser thereafter
> acquires title to the H Street Property through a
> foreclosure of the H Street Mortgage pursuant to clause
> (C) of this subparagraph)[.]

This is reinforced by § 2.2.3(e)(iv), which provides:

> except as provided in the preceding clauses (i) - (iii)
> above, and any other provision of this Agreement that, by
> its terms, survives the termination of this Agreement,
> the Parties shall have no further obligations or
> liabilities to one another under this Agreement.

Accordingly, even if MR 619 could be viewed as a Developer

obligated to convey the Eye Street Retail Unit (which it cannot),

the provisions of § 2.2.3(e) make clear that MR 619 (as the H

Street Purchaser) no longer had any such obligation upon its

rightfully invoking a termination under § 2.2.4(c).

3.

MR 619 did not breach its obligations under the *Agreement*.

The Debtor has advanced several theories under which it asks

23

this court to find MR 619 liable for breach of contract.  Even
when viewing the evidence in the light most favorable to the
Debtor, those theories must be rejected.  First, the Debtor
contends that by sending the Notice of Termination jointly signed
by the Eye Street Purchaser and MR 619, MR 619 violated the right
of Debtor to receive the Eye Street Retail Unit. *See Second
Amended Complaint*, at 40-41, ¶¶ 156-57.  This is the same
argument raised by the Debtor during the hearing of July 29,
2015, that was "rejected" by this Court during the hearing and in
its order of July 30, 2015. *See Order re Objection to Claim of
MR 619 H Street Capital, LLC*, at 2 (Dkt. No. 62) ("The debtor
argues that by joining in the [Notice of Termination] submitted
collectively by the Eye Street Purchaser and itself as the
Purchaser, MR 619 should be viewed as engaging in the breach of
the *Purchase and Sale Agreement* by the Eye Street Purchaser.  I
rejected that argument.") (italics in original).  The unambiguous
terms of the *Agreement* make clear that MR 619 was not obligated
to convey the Eye Street Retail Unit to the Eye Street Seller.
Accordingly, any contractual breach arising from a letter stating
that the obligation to convey that unit was terminated could only
be committed by the Eye Street Purchaser.

    The Debtor likewise contends that MR 619 is liable for a
breach of a promise under the *Agreement* to provide parking
spaces, specifically alleging that "the [*Agreement*] also promised

24

the Seller that it would have the right to park in the new garage
that would be constructed as part of the Eye Street
Improvements." *Second Amended Complaint*, at 41, ¶ 160.  The
plain and unambiguous language of § 12.22.1 of the *Agreement*
makes clear that it was the Eye Street Purchaser that was
obligated under that provision of the *Agreement*, as it was to be
the owner of the Eye Street Improvements, and was the only entity
that developed any property (part of which was the construction
of the parking garage).  I thus reject this as a basis for
objecting to MR 619's claim.

Additionally, the Debtor asserts that the H Street Deposit
Note "incorporated the terms and conditions of the [*Agreement*]
and was expressly subject to the terms and conditions of the
[*Agreement*]." *Second Amended Complaint*, at 32, ¶ 118.  Based on
the alleged "material breach of the [*Agreement*] by Purchaser,"
Debtor asserts that it has the right to rescind the *Agreement* and
terminate its obligations under the H Street Deposit Note.
*Second Amended Complaint*, at 47, ¶ 189.  The H Street Deposit
Note is the basis of MR 619's Claim and a copy of the note is
attached to MR 619's proof of claim.  The Debtor's premise that
the H Street Deposit Note incorporated the terms and conditions
of the *Agreement* is incorrect.  Only the "applicable terms" of
the *Agreement* are deemed to be incorporated in the H Street
Deposit Note, not all of the terms and conditions of the

25

*Agreement*.  Further, the unambiguous terms of the *Agreement*
clearly provide that the Debtor remains liable to pay the
outstanding principal and all accrued interest under the H Street
Deposit Note notwithstanding the termination of the *Agreement*.
*Agreement*, at § 2.2.3(f)(iv).  Moreover, for the reasons stated
herein, MR 619 has not breached the *Agreement* as is alleged by
the Debtor in the *Second Amended Complaint*.  I overrule this
objection to MR 619's Claim.

                              C.

     MR 619 has met its burden of showing that, under the
unambiguous terms of the *Agreement*, MR 619 did not breach the
*Agreement* and the Debtor thus does not have a claim for damages
or for rescission against MR 619 based upon MR 619's alleged
breach.  MR 619 has likewise established that, under the terms of
the *Agreement*, the Debtor has an obligation to repay the
$1,250,000 H Street Deposit.  MR 619 having filed a properly
supported motion establishing the foregoing, the burden shifts to
the Debtor to demonstrate specific facts showing that there
remains a genuine issue for trial.  To satisfy this burden, the
Debtor relies on factual allegations made in support of its tort
claims against MR 619, which claims the Debtor asserts as a
setoff against MR 619's claim.  Although this decision disposes
of some of those tort claims, I conclude below that the tort
claims that survive present genuine issues of material fact,

which must be resolved at trial before I can fully dispose of the Debtor's objection to MR 619's claim in this proceeding.

### III

The Debtor's *Second Amended Complaint*, filed in the Superior Court and offered in support of the Debtor's objection to MR 619's proof of claim, asserts several tort claims against MR 619 including claims for fraudulent concealment, negligent misrepresentation, breach of duty to disclose the meaning of an ambiguous contractual term, and tortious interference with contractual relationship.  In this proceeding, the Debtor has asserted these claims as an offset to MR 619's claim.

The Debtor's claims for fraudulent concealment, negligent misrepresentation, breach of duty to disclose the meaning of an ambiguous contractual term, and at least parts of the Debtor's other tort claims are all predicated on the theory that the Eye Street Purchaser and MR 619 intentionally misled the Eye Street Seller (whose rights are now held by the Debtor) with respect to the meaning of § 2.2.3(e) of the *Agreement*.  As a result, the Debtor argues, the Eye Street Seller unwittingly, and to its disadvantage, entered into a contract under which the Eye Street Purchaser had "secretly" obtained a right to terminate its obligation to deliver the Eye Street Retail Unit under a provision of the *Agreement* that the Debtor and the Eye Street Seller believed conferred contract termination rights only to the

27

H Street Purchaser.  Specifically, according to the Debtor's
objection to claim, the Eye Street Seller (the Debtor's
predecessor-in-interest) believed that § 2.2.3(e) of the
*Agreement* related solely to the parties' rights and obligations
regarding the H Street Property, and the Eye Street Purchaser and
MR 619, through their attorney, knowingly and with the intent to
deceive the Eye Street Seller concealed their belief that
§ 2.2.3(e) gave the Eye Street Purchaser a contractual right to
terminate its obligation to deliver the Eye Street Retail Unit
even if the Eye Street Seller satisfied all of its obligations
relating to the Eye Street Property.

It is unnecessary for me to resolve any factual dispute with
respect to these allegations of misleading and concealment during
contract negotiations, however, because even assuming that Tibbs
intentionally misled the Eye Street Seller about his belief that
§ 2.2.3(e) conferred termination rights on the Eye Street
Purchaser,[11] and even assuming there is a theory under which I
could find that Tibbs concealed information he had a duty to
disclose to the Eye Street Seller, I have concluded that under

---

[11]   In the court's *Estimation Decision*, I concluded that
Tenenbaum and not Tibbs had introduced the phrase "Condominium
Properties" into § 2.2.3(e) during contract negotiations.  Upon
further review of the exhibits, specifically MR 619's Exhibit AA
(email from Tibbs to Tenenbaum dated 12/16/2012 at 5:19:48 p.m.),
it appears that Tibbs was the first to suggest this terminology.
For purposes of this decision, it is unnecessary to address this
factual question.

the plain meaning of the *Agreement*, § 2.2.3(e) gave termination

rights only to the H Street Purchaser and not the Eye Street

Purchaser.[12]   It follows that the Debtor was not divested of its

right to receive the Eye Street Retail Unit due to this

provision, secretly or otherwise, and therefore cannot show that

it suffered harm as a result of the Eye Street Purchaser having

failed to disclose its belief that it had obtained a right to

terminate the *Agreement* under § 2.2.3(e) or as the result of any

attempt on the part of the Eye Street Purchaser to sneak such a

provision into the *Agreement*.

This is consistent with the *Estimation Decision*, in which I

found that "[t]he jury would likely conclude that, when MR 619

tendered its notice of termination, there was no termination of

the obligation of the Eye Street Purchaser to convey to the Eye

---

[12]   In its reply brief filed in support of its *Motion for
Summary Judgment*, MR 619 contends that "consideration of whether
the obligation to deliver the Eye Street Retail Unit had been
terminated is not necessary or appropriate in the context of
determining the amended objection to MR 619's Claim."  MR 619
likewise contends that "[w]hether or not Debtor has a right to
delivery of the Eye Street Retail Unit bears no relevance to the
amended objection to MR 619's Claim unless MR 619 is the party
who is required to deliver the Eye Street Retail Unit . . . ."  I
disagree.
    The starting point for disposing of the Debtor's claim that
it was harmed as a result of Tibbs misleading Tenenbaum as to the
meaning of § 2.2.3(e) of the *Agreement* is to establish the
meaning of § 2.2.3(e).  I reject MR 619's assertion that such
findings have no relevance here, when in fact, they go to the
very essence of whether the Debtor has any valid tort or contract
claims to assert against MR 619 in support of its objection to
claim.

Street Seller the Eye Street Retail Unit." *Estimation Decision*

at 19.  The decision goes on to observe:

> Because the Eye Street Seller's right (now held by the
> Debtor) to receive the Eye Street Retail Unit would
> remain in place, the Debtor would be entitled to recover
> any damages for a breach of that Agreement.  Therefore,
> the jury would not likely find it necessary to award
> damages under a tort theory other than, perhaps,
> attorney's fees incurred fighting against an
> interpretation of the Agreement that treated the entire
> Agreement terminated.

*Id.* at 21.  The court having ruled that § 2.2.3(e) conferred no

termination rights on the Eye Street Purchaser, I overrule the

Debtor's objection to MR 619's Claim to the extent it is based on

the Debtor's tort claims against MR 619 for fraudulent

concealment, negligent misrepresentation, and breach of duty to

disclose the meaning of ambiguous contractual term.

IV

The remaining claims, as set forth in the *Second Amended

Complaint* filed in the Superior Court, are: (1) Count X -

Tortuous [sic] Interference With Contractual Relations; (2) Count

XI - Civil Conspiracy; and (3) Count XII, which is styled as a

claim for Alter Ego, but which is more properly understood as a

request to hold MR 619 jointly liable for the conduct of its co-

defendants rather than as a separate claim for relief.  Although

the tortious interference and civil conspiracy claims are based

in part on the erroneous interpretation of the *Agreement* that has

now been rejected by the court, those claims are also based on

30

the broader allegation that MR 619, working in concert with
others, induced and persuaded the Eye Street Purchaser to breach
its contractual obligations to the Debtor.  The court's
resolution of the disputed contract language in the *Agreement*
does not resolve the issues presented by these remaining claims.

As explained above, to avoid a ruling of summary judgment in
favor of MR 619, the burden shifted to the Debtor to demonstrate
specific facts showing that there remains a genuine issue for
trial.  The Debtor has met that burden.  It is uncontroverted
that the Eye Street Retail Unit was not conveyed, and I have
found that under the terms of the *Agreement*, the Eye Street
Purchaser had a contractual obligation to deliver the Eye Street
Retail Unit.  The Debtor, in turn, has offered factual support
for its contention that there was no contractual basis for the
Eye Street Purchaser's non-performance, and has likewise offered
support for its contention that the overlapping management and
ownership interests between MR 619 and the Eye Street Purchaser
provide a legal and factual basis for holding MR 619 jointly
liable for any breach on the part of the Eye Street Purchaser,
and for stating a claim of conspiracy.  Having made such a
showing, the burden shifted back to MR 619 to show that there is
an absence of evidence to support the Debtor's claims.  *See*
*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  MR 619
expresses doubt regarding the Debtor's likelihood of success on

its tort claims in the Superior Court, but has not identified an

absence of facts or evidence to support the Debtor's claims.  The

Debtor is entitled to an adjudication of its prepetition claims

against MR 619 before the court disposes of the objection to

claim in this court.

In its opposition brief, the Debtor stated:

> [T]he Debtor is prepared to accept the consequences of
> the Court's Estimation Decision for purposes of bringing
> this Chapter 11 proceeding to a prompt and decisive end,
> provided that and conditioned upon the Court adopting
> both of the two pivotal rulings from its Estimation
> Hearing as follows: (i) MR 619 has no contractual
> liability as the Purchaser or Developer under the
> [*Agreement*] to deliver the Eye Street Retail Unit; and
> (ii) MR 619 has no tort liability for the breach by the
> Eye Street Purchaser in repudiating its obligation to
> convey the Eye Street Retail Unit because the Debtor's
> right to the Eye Street Retail Unit was not extinguished
> when MR 619 terminated its obligation to purchase the H
> Street Property due to the failure to achieve the H
> Street Acquisition Requirements and the Debtor's right to
> receive the Eye Street Retail Unit remains in place."

In other words, the Debtor is prepared to abandon certain

defenses to MR 619's claim in this court if I rule in favor of

the Debtor on certain key points.  I have ruled that MR 619 has

no contractual liability as the Purchaser or Developer under the

*Agreement* to deliver the Eye Street Retail Unit, and thus could

not be liable for breaching such an obligation.  I have likewise

found that the obligation to convey the Eye Street Retail Unit

was not extinguished when MR 619 terminated its obligation to

purchase the H Street Property.  I cannot, however, adopt the

language suggested by the Debtor that incorporates a finding that

32

the Eye Street Purchaser breached the *Agreement*.   Certainly many facts point to this possibility, but the Eye Street Purchaser is not currently before me, and it may very well have a defense to such a claim.

Resolution of the Debtor's claims for tortious interference and civil conspiracy both require a predicate finding that the Eye Street Purchaser or its affiliates breached the *Agreement*. The same is true for establishing MR 619's liability under an alter ego theory.  If the Debtor still wishes to assert these claims as a basis for objecting to MR 619's claim, I will abstain and require the parties to litigate those issues pursuant to the *Second Amended Complaint* in the Superior Court.  Alternatively, the Debtor may prefer to treat this decision as a final resolution of its objection to MR 619's claim in this court, without prejudice to pursuing any remaining claims it has against MR 619 in the Superior Court action.

V

An order follows.

[Signed and dated above.]

Copies to: Recipients of e-notification of filings.